UNITED PETROLEUM SERVICE, INC., Appellant,

v.

Thomas PIATCHEK, Respondent.

No. ED 88429.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 16, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 20, 2007.

Application for Transfer Denied May 1, 2007.

Laurence D. Mass, St. Louis, MO, for appellant.

Steven H. Schwartz, Matthew G. Koehler, Brown & James, P.C., St. Louis, MO, for respondents.

GARY M. GAERTNER, SR., Judge.

Appellant, United Petroleum Service, Inc. ("United Petroleum"), appeals from the judgment of the Circuit Court of St. Louis County granting summary judgment in favor of Respondent, Thomas Piatchek ("Piatchek"). In the underlying case, United Petroleum brought a legal malpractice action against Piatchek alleging he filed an incomplete mechanic's lien account on its behalf. We affirm.

The following is the evidence from the record viewed in the light most favorable to United Petroleum:

On September 17, 2001, United Petroleum, a subcontractor, entered into a contract with Construction Remedies Corporation ("CRC"), under which United Petroleum agreed to "furnish equipment, materials and labor to install a complete fuel supply system" on property owned by Lackland Business Park, LLC ("Lackland") and leased by MCI WorldCom, Inc. ("MCI") ("the installation project") for a lump sum of $61,571.23. The contract provided that "its terms will remain in effect until completion of the project and acceptance of materials and services provided under this contract by both [CRC] and [MCI]."

United Petroleum and CRC executed an addendum to the contract, under which United Petroleum agreed to provide an additional $5,000.00 worth of services for the installation project. In addition, United Petroleum provided $6,388.37 worth of other services for CRC for the installation project.

On or about February 1, 2002, MCI contacted United Petroleum to report that a sensor alarm was activated within the underground sump tank, which was part of the underground fuel tank system. The alarm was triggered by a leak in the sump tank. As a result, on February 1, 2002, a

United Petroleum employee ("Hardesty") worked for four hours attempting to repair the leak in the underground sump tank. This work involved pumping away 6,000 to 7,000 gallons of water that had accumulated around the outside of the underground sump tank and greasing the watertight seal on the sump tank's lid.

On or about March 13, 2002, MCI contacted United Petroleum to report that the sensor alarm had activated a second time. Consequently, on March 13, 2002, Hardesty again worked two to three hours to repair the leak in the underground sump tank. This work included pumping more water out of the sump tank. Thereafter, United Petroleum discovered that the leak occurred because of a loose grommet and then fixed the leak by tightening the grommet.

After CRC did not pay United Petroleum for any amounts owed for services and materials, CRC contacted Piatchek on or about March 25, 2002, asking him to file a mechanic's lien account on its behalf for $72,959.60 plus finance charges, for a total of $74,991.84.

A few days later, Piatchek advised United Petroleum that the deadline to file a mechanic's lien account for the unpaid work would be six months from the last date when an employee of United Petroleum worked on the installation project. United Petroleum then told Piatchek the last date it worked on the installation project was on December 29, 2001. United Petroleum did not tell Piatchek about the work performed on February 1, 2002 and March 13, 2002. As a result, Piatchek did not know that any work was performed on those dates.

Piatchek filed a mechanic's lien account for United Petroleum on June 12, 2002. The mechanic's lien account was incomplete; it included documents to support only $6,388.37 of the debt owed to United Petroleum for the installation project.[1] After United Petroleum learned that Piatchek filed an incomplete mechanic's lien account on its behalf, United Petroleum discharged Piatchek sometime between July 19, 2002 and July 24, 2002.

On July 24, 2002, United Petroleum hired new counsel to handle its mechanic's lien claim for the installation project. Subsequently, United Petroleum's new counsel filed a mechanic's lien action against Lackland. For reasons not relevant to this case, the trial court granted Lackland's dispositive motions against United Petroleum's mechanic's lien claim. United Petroleum later obtained a judgment against CRC that exceeded the full amount of the debt; however, it has been unable to collect on this judgment.

On July 27, 2005, United Petroleum brought a legal malpractice action against Piatchek alleging he filed an incomplete mechanic's lien account on its behalf. Piatchek then filed a motion for summary judgment, asserting that United Petroleum cannot prove his acts proximately caused its damages because United Petroleum terminated him and retained new legal counsel before the time to file the mechanic's lien account expired. Piatchek specifically alleged that: (1) United Petroleum had not completed its work until March 13, 2002, the date on which it fixed the leak in the underground sump tank; thus, the time to file the mechanic's lien account did not start to run until March

---

1. Piatchek asserts the mechanic's lien was incomplete because United Petroleum did not supply him with necessary documents and information despite his request. United Petroleum disputes Piatchek's assertion that he requested any additional information. Nevertheless, the reason the mechanic's lien statement was incomplete is not relevant to Piatchek's motion for summary judgment.

13, 2002, and (2) as a result, the time to file the mechanic's lien account expired in September of 2002, six months after March 13, 2002. United Petroleum retorted that: (1) it completed its installation work on December 29, 2001, and the work done on February 1, 2002 and March 13, 2002 was merely warranty work and not work on the installation project itself; consequently, the time to file the mechanic's lien account started to run on December 29, 2001, and (2) as a result, the time to file the mechanic's lien account expired on June 29, 2002, six months after December 29, 2001.

On July 19, 2006, the trial court granted Piatchek's motion for summary judgment, finding that "the last date on which [United Petroleum] performed work was on March 13, 2002, and that said work was pursuant to the original contract between [United Petroleum] and [CRC]." This appeal by United Petroleum followed.

Our review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We view the record in the light most favorable to the non-movant. *Id.* Facts set forth in support of the moving party's motion are considered to be true unless contradicted by the non-movant's response. *Id.* A trial court's judgment will be upheld if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 380.

When a witness offers the out-of court statements of another person to prove the truth of the matter asserted in the statement, then the testimony is hearsay. *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 120 (Mo.banc 1995). Hearsay statements cannot be considered in ruling on the propriety of summary

judgment. *Muegler v. Berndsen,* 964 S.W.2d 459, 463 (Mo.App. E.D.1998). Only evidence that is admissible at trial can be used to sustain or avoid summary judgment. *Id.*

In its sole point on appeal, United Petroleum contends that the trial court erred in granting summary judgment in favor of Piatchek. United Petroleum asserts Piatchek failed to establish a right to judgment as a matter of law with respect to the element of proximate cause because the time to file United Petroleum's mechanic's lien account expired while Piatchek was employed as its legal counsel.

To establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) negligence or breach of contract by the attorney; (3) proximate causation of damages; and (4) damages. *Klemme v. Best,* 941 S.W.2d 493, 495 (Mo.banc 1997). In order to prove causation of damages in a case involving a missed statute of limitations deadline, the plaintiff must establish that the statute of limitations expired during the attorney's employment as his counsel. *See Faulkner v. Ensz,* 109 F.3d 474, 475–77 (8th Cir.1997) (holding that an attorney could not be liable for malpractice because the plaintiff could not establish a causal connection between damages from a missed statute of limitations deadline and the attorney's acts when the attorney withdrew before the expiration of the deadline and new counsel assumed responsibility for plaintiff's claim).

Pursuant to section 429.080, RSMo 2005,[2] a mechanic's lien claimant must file "a just and true account of the demand due" "within six months after the indebtedness shall have accrued." Section 429.080. The term "accrued" in section

**2.** All statutory references are to RSMo 2005 unless otherwise indicated.

429.080 is construed to mean "when the indebtedness becomes complete; when the last labor is performed or the last material is furnished under an agreement." *Shamrock Bldg. Supply v. St. Louis Inv.*, 842 S.W.2d 556, 558 (Mo.App. E.D.1992). Until the time period expires under section 429.080, a lien claimant may remedy a defective lien account by filing an amended one. *Zundel v. Edge, Inc.*, 705 S.W.2d 113, 115 (Mo.App. E.D.1986).

"A subcontractor cannot, after the termination of an account, extend the mechanic's lien filing time by rectifying some fault of his in performing the contract." *S & R Builders & Suppliers, Inc. v. Marler*, 610 S.W.2d 690, 694 (Mo.App. E.D.1980). But work performed by a subcontractor that is not intended to simply extend the mechanic's lien account filing time but is necessary to complete the project in a workmanlike manner operates to extend the lien deadline if it is reasonably within the purview of the original contract. *A.E. Birk & Son Plumbing & Heating, Inc. v. Malan Const.*, 548 S.W.2d 611, 615–16 (Mo.App.St.L.1977).

If labor is performed after it is accepted as substantially complete under the contract, the work will not be lienable. *See S & R*, 610 S.W.2d at 694 (holding that if labor is done after the owner accepts the work as substantially complete under the contract, the work will not be lienable). But when additional labor is requested to be done, even if the work is minor, the indebtedness does not become complete until that labor is performed. *See id.* Additional labor is considered requested to be done when the subcontractor expends labor at the request of a party rather than on his own volition. *Brown v. Davis*, 249 S.W. 696, 698 (Mo.App.St.L.1923).

In this case, although Piatchek filed an incomplete mechanic's lien account on June 12, 2002, the account could have been amended to provide additional information at any time before the time to file the mechanic's lien account expired. Accordingly, in order for United Petroleum to prove Piatchek caused its damages, it must prove that the statute of limitations deadline to file a complete mechanic's lien account expired before it discharged Piatchek in July of 2002.[3]

Under section 429.080, the time to file a mechanic's lien account expires six months after it begins to run. If the time to file the account began to run on December 29, 2001, as asserted by United Petroleum, the deadline to re-file a corrected lien occurred on June 29, 2002, which occurred before Piatchek was terminated. On the other hand, if the time to file the account began to run on March 13, 2002, as asserted by Piatchek, the deadline to re-file a corrected lien occurred on September 13, 2002, after Piatchek was terminated. Thus, the only issue on appeal is whether the time to file the mechanic's lien account began to run on either December 29, 2001 or March 13, 2002.

The labor performed by United Petroleum on February 1, 2002 and March 13, 2002 was not intended to extend the time it could file its mechanic's lien account. In fact, United Petroleum does not want to extend the time for filing its mechanic's lien account because that would be fatal to their legal malpractice action against Piatchek. Rather, as admitted by United Petroleum, the labor performed on February 1, 2002 and March 13, 2002 was necessary to complete the installation project in a workmanlike manner. Thus, this work operates to extend the lien deadline if it is

---

**3.** United Petroleum concedes it does not have a legal malpractice claim against Piatchek if the time to file its mechanic's lien expired after it discharged Piatchek.

reasonably within the purview of the original contract.

United Petroleum admits that the contract between it and CRC required both MCI and CRC to accept United Petroleum's work as complete. Apparently, United Petroleum attempts to assert that despite this language, it was not necessary for MCI to accept United Petroleum's work because "[United Petroleum] never had any contact with MCI throughout the construction." But United Petroleum does not cite, nor can we find, any proposition in the record to support this assertion. Furthermore, any contact or lack of contact between United Petroleum and MCI is irrelevant unless this contact constitutes either MCI's acceptance or MCI or United Petroleum's intent to withdraw from the terms of the contract.

There is no evidence that MCI accepted the work. In fact, MCI contacted United Petroleum on two different occasions to report that the sensor alarm within the underground sump tank was activated. After MCI contacted United Petroleum, United Petroleum performed labor on the underground sump tank, which is part of the underground fuel tank system, on February 1, 2002 and March 13, 2002. Thus, MCI requested that United Petroleum investigate a problem with the underground fuel tank system.

█ Moreover, there is no admissible evidence that CRC accepted United Petroleum's work as complete. Michael Cole, a United Petroleum employee, stated in his affidavit that on December 29, 2001, Walter Boyd of CRC, who oversaw the project on behalf of the company, accepted the work completed by United Petroleum. But this is hearsay evidence that cannot be used to avoid summary judgment. Harvey Stokes, Vice President of United Petroleum, stated that United Petroleum's work in February and March was warranty work and was not billed and that it is

standard practice in the industry that after a job is completed and accepted the installer will fix defective equipment without charge. But just because it is standard practice in the industry to fix defects after acceptance of the job does not mean that CRC accepted the work in this case.

United Petroleum admits the February 1, 2002 and March 13, 2002 work was performed by United Petroleum pursuant to its obligations under the contract to correct unknown defects in order to provide an underground fuel storage tank system in a workmanlike manner. United Petroleum also admits it did not bill for the work on February 1, 2002 or March 13, 2002 because it was deemed part of United Petroleum's work of completely installing the underground fuel tank and sensor-alarm system pursuant to its contract with CRC.

As admitted by United Petroleum, the February and March work was necessary to complete the installation project in a workmanlike manner and this work was within the purview of its original contract. Thus, the work on February 1, 2002 and March 13, 2002 extends the mechanic's lien account deadline to September 13, 2002.

Because the deadline to file United Petroleum's mechanic's lien account expired after United Petroleum discharged Piatchek, as a matter of law, United Petroleum cannot prove that Piatchek proximately caused its damages. Therefore, the trial court did not err in granting summary judgment in favor of Piatchek. Point denied.

Based on the foregoing, the judgment of the trial court is affirmed.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J., concurs.