

# In the Missouri Court of Appeals
## Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| M.W., an infant, by and though her natural guardian and next friend, K.W., | ) | No. ED107943 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| Appellant, | ) | of Saint Louis County |
| | ) | 17SL-CC01942 |
| v. | ) | |
| | ) | |
| SIX FLAGS ST. LOUIS, LLC, | ) | Honorable Thea A. Sherry |
| | ) | |
| Respondent. | ) | Filed: July 21, 2020 |

Before James M. Dowd, P.J., Gary M. Gaertner, Jr., J., and Robin Ransom, J.

OPINION

M.W. appeals the trial court's grant of summary judgment in favor of Six Flags St. Louis, LLC, ("Six Flags") on her claim of sex discrimination under the Missouri Human Rights Act ("MHRA"), Section 213.010, RSMo. (2016)[1] *et seq.*, due to a hostile work environment. She argues Six Flags was not entitled to judgment as a matter of law because genuine issues of material fact exist regarding two of the elements of a hostile work environment claim: that the harassment affected a term, condition, or privilege of her employment; and that Six Flags knew or should have known of the harassment and failed to take appropriate remedial action. However, the evidence before us does not raise any genuine issues of material fact and M.W. has

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), unless otherwise indicated.

failed to adduce sufficient evidence allowing a jury to find these two essential elements of her hostile work environment claim. We therefore affirm the trial court's grant of summary judgment in favor of Six Flags.

Background[2]

M.W. began working as a seasonal employee at Six Flags when she was sixteen years old and worked the 2016 and 2017 summer seasons, which ran from May 29 to November 5, 2016, and from June 3 to September 24, 2017. During these two seasons, M.W. was a ride operator at the Justice League and Shazam rides. Upon being hired, M.W. attended orientation and training on Six Flags's procedures, which included training on the "Zero Tolerance of Harassment and Discrimination" policy and the procedure to report harassment. Two primary incidents of harassing conduct occurred in July of 2016 while M.W. worked at Six Flags.

a. Complained-of harassing conduct

The complained-of conduct consisted of harassing behavior on the part of two of M.W.'s male non-supervisory co-workers, J.B. and T.W. These two incidents are referred to as the "Glasses Room Incident" and the "Video Incident," described below.[3]

i. Glasses Room Incident

On July 6, 2016, M.W. and a female co-worker, N.G., were assigned to clean the 3-D glasses used on the Justice League ride in the "glasses room," where equipment for the ride was

---

[2] The facts are set forth in the light most favorable to M.W., as she was the party against whom summary judgment was entered. *See ITT Commercial Fin. Corp. v. Mid.-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

[3] Although M.W. asserts other harassing conduct, we only consider the glasses room and video incidents on this motion for summary judgment. As further discussed in our analysis of M.W.'s points on appeal, M.W. failed to properly assert other alleged harassing conduct for the trial court's—and this Court's—review, in that the additional alleged harassing conduct is only supported by inadmissible hearsay evidence, which we cannot consider on a motion for summary judgment. *See Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 245–46 (Mo. App. E.D. 2006) (deposition statement was inadmissible hearsay that could not be used to avoid summary judgment); *see also Bryant v. Bryan Cave, LLP*, 400 S.W.3d 325, 333 (Mo. App. E.D. 2013).

maintained.  J.B. and T.W. entered, locked the door, and were greeted by M.W. and N.G.  J.B. commented that there were "two girls and two boys" in the room and suggested they should "get it on."  J.B. and T.W. proceeded to pull down their pants, but not their underwear.  M.W. instructed them to pull their pants back up, and both boys complied.  At some point, J.B. and T.W. tightly grabbed M.W. by the arms and legs, laughing.  M.W. stated she did not find their behavior funny and kicked J.B.; after they released M.W., T.W. stepped on her hair.  M.W. proceeded to unlock the "glasses room" door, clock out of work for the night, and leave Six Flags.

     *ii.*    *Video Incident*

Later that night, on July 6, 2016, some employees stayed after Six Flags had closed to enjoy the park, as they were allowed to do on designated "ride nights."  After the Glasses Room Incident, N.G. and J.B. stayed at Six Flags for an employee "ride night."  The next day, on July 7, 2016, J.B. approached M.W. to show her something on his cellular telephone from the employee night: a video of N.G. engaging in oral sex with J.B.  M.W. saw approximately five seconds of the video and pushed the cellular telephone away.  J.B. proceeded to hit and "karate chop" M.W. on the head, instructing her not to tell anyone about the video he showed her.

  *b.*  *Six Flags's response to the complained-of conduct*

On July 7, 2016, the same day that J.B. showed her the video, M.W. told two of her supervisory "leads," Tyler Bauman ("Bauman") and Brittney Jackson ("Jackson"), about the Video Incident.  M.W. did not tell either lead about the Glasses Room Incident.  Bauman reported the Video Incident and J.B.'s behavior to the Six Flags Human Resources ("H.R.") department the next morning, on July 8, 2016.  Bauman and one other lead were interviewed that day in connection with this report, and another lead was interviewed on July 9.  H.R. also

contacted N.G. on July 8 to meet with her regarding the Video Incident. N.G. met with H.R. during her next regularly scheduled shift on July 9, during which she formally filed a complaint with H.R. against J.B. and T.W.

Six Flags H.R. officially launched an investigation into the Video Incident on July 9, 2016, after speaking with N.G. This investigation was led by H.R. Supervisor JoAnn Hamilton ("Hamilton") and H.R. Manager Michael Ude ("Ude"). Both J.B. and T.W. were interviewed on July 9 and were suspended pending the investigation. As part of its investigation into the Video Incident, Hamilton and Ude interviewed M.W. on July 11, her next regularly scheduled shift. Because M.W. was a minor at the time, Six Flags notified M.W.'s parents of the interview. During M.W.'s interview, M.W. described both the Video Incident and the Glasses Room Incident; M.W. also provided a written statement of the two incidents. M.W.'s impression during the interview was that H.R. personnel was aware of the Glasses Room Incident prior to her interview because Hamilton and Ude asked M.W. "what happened in the room"; Hamilton attested that H.R. had no knowledge of the Glasses Room Incident before M.W.'s July 11 interview. Hamilton and Ude offered to M.W. that she could move to another ride at Six Flags if she would feel more comfortable in a different area, and asked M.W. what changes she would like enacted if she decided to stay at Six Flags. M.W. testified at her deposition that, at the end of her H.R. interview, Hamilton told M.W. that "[She] can't let those two bother [her]. They're boys. Boys are going to be boys, and it's going to happen at workplaces."[4]

As a result of the investigation, Six Flags terminated both J.B. and T.W., effective July 9, 2016. Six Flags also reported the video on J.B.'s cellular telephone to the Eureka police that same day. J.B.'s last day working at Six Flags was July 7, 2016; T.W.'s was July 8, 2016, on

---

[4] M.W. testified later at her deposition that Hamilton's statement was "It happens at every workplace" and "It's going to happen to every workplace."

4

which M.W. and T.W. worked together. According to H.R. documents, J.B.'s inappropriate behavior was first reported to Six Flags on July 8 and T.W.'s inappropriate behavior was reported on July 9. H.R. documents note no previous instances of inappropriate behavior, and Hamilton attested that N.G.'s complaint was the first formal or informal complaint that Six Flags had received regarding J.B. or T.W. M.W., however, stated in her deposition that J.B. had previously engaged in inappropriate behavior, of which Six Flags was or should have been aware.

### c. M.W.'s hostile work environment claim under the MHRA

M.W. filed a one-count petition alleging sexually harassing conduct creating a hostile work environment at Six Flags, in violation of the MHRA, on May 30, 2017. The complaint specifically identified harassing conduct on the part of J.B. during the summer of 2016. In January of 2019, Six Flags filed a motion for summary judgment contending it was entitled to judgment as a matter of law because M.W. could not establish two essential elements of her claim: that the harassing conduct affected a term, condition, or privilege of her employment; and that Six Flags knew or should have known of the harassing conduct and failed to take proper remedial action. The trial court heard argument on Six Flags's motion, took it under advisement, and granted summary judgment in favor of Six Flags on April 24, 2019. This appeal follows.

Standard of Review

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Mo. R. Civ. P. 74.04(c)(6) (2019).[5] "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT Commercial Fin. Corp. v. Mid.-Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc

---

[5] All further rule references are to the Missouri Rules of Civil Procedure (2019), unless otherwise noted.

1993).  Where, as here, the party seeking summary judgment is the defending party,[6] it may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.  *Id.* at 381.  Unless contradicted by the non-movant's response, we take as true the facts set forth in support of the summary judgment motion.  *Id.* at 376.

We review a trial court's grant of summary judgment de novo, viewing the record and all reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered.  *Id.*  However, we exercise caution in affirming a grant of summary judgment because summary judgment is "an extreme and drastic remedy" that forecloses the opposing party's day in court.  *Id.* at 377.  Such caution is particularly warranted "in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence."  *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009).

<u>Discussion</u>

On appeal, M.W. challenges the trial court's grant of summary judgment in favor of Six Flags on her claim of sexual discrimination under the MHRA due to a hostile work environment. The MHRA prohibits an employer from discriminating against an individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's … sex …." Section 213.055.1(1)(a).[7]  To prevail on a claim of discrimination due to a hostile work

---

[6] A "defending party" is the "party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought." Mo. R. Civ. P. 74.04(b).

[7] Section 213.055's prohibition on employment discrimination applies to corporations employing minors. RSMo. 294.095.

environment, a plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) her gender was a contributing factor[8] in the harassment; and (4) the harassment affected a term, condition, or privilege of employment. *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 244 (Mo. App. E.D. 2006); *Diaz v. AutoZoners, LLC*, 484 S.W.3d 64, 83 (Mo. App. W.D. 2015). Further, in a case of non-supervisory co-worker harassment, as here, a plaintiff must show an additional element to impose employer liability: that the employer knew or should have known of the conduct and failed to take proper remedial action. *Mason v. Wal-Mart Stores, Inc.*, 91 S.W.3d 738, 742 (Mo. App. W.D. 2002); *Diaz*, 484 S.W.3d at 83. In analyzing employment discrimination cases under the MHRA, we are guided both by Missouri law and applicable federal employment discrimination cases. *Mason*, 91 S.W.3d at 741; *Cooper*, 204 S.W.3d at 242.

Six Flags argued that M.W. failed to establish the fourth and fifth elements of a hostile work environment claim, namely that: the harassment affected a term, condition, or privilege of employment; and that the employer knew or should have known of the conduct, and failed to take proper remedial action. M.W. contends in her four points on appeal that the record evinces disputed issues of material fact as to these two elements. However, we find the record established Six Flags's right to judgment as a matter of law, based on facts which are not genuinely disputed, because M.W. has failed to establish these essential elements of her claim, as discussed below. For clarity, we group M.W.'s points on appeal by their corresponding element of a hostile work environment claim, and we therefore address her points out of order.

<u>Point IV: whether the complained-of conduct affects a term, condition, or privilege of employment</u>

---

[8] The amendments to the MHRA that implemented the "motivating factor" language took effect in August of 2017, after the filing of this suit, and therefore the "contributing factor" standard applies. *See Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 795 (Mo. App. W.D. 2018).

In her fourth point on appeal, M.W. argues the trial court erred in granting Six Flags's motion for summary judgment because genuine issues of material fact existed as to whether a term, condition, or privilege of M.W.'s employment was affected by the harassing conduct she experienced. Specifically, M.W. contends the harassment affected the terms, conditions, or privileges of her employment in that: (1) Six Flags took adverse action against M.W. by suggesting she transfer work areas after the incidents, and (2) Six Flags's H.R. representative Hamilton made statements to M.W. regarding the harassment that "boys will be boys," and it "happens at every workplace."[9] We disagree.

The fourth element a plaintiff must establish to prevail on a hostile work environment claim is that the harassment affected a term, condition, or privilege of employment. *Cooper*, 204 S.W.3d at 244. Sexual harassment affects a term, condition, or privilege of employment when it creates an intimidating, hostile, or offensive work environment or results in a tangible adverse employment action. *Hill*, 277 S.W.3d at 666. The standard for proving this fourth element is demanding. *Watson v. Heartland Health Labs, Inc.*, 790 F.3d 856, 861 (8th Cir. 2015) (analyzing MHRA claim). The harassing conduct must be "so intimidating, offensive, or hostile that it poisoned the work environment and that the workplace was permeated with discriminatory intimidation, ridicule, and insult," *id.* (internal citations and quotations omitted), both viewed subjectively by the plaintiff and viewed objectively by a reasonable person. *Cooper*, 204 S.W.3d at 244–45. We assess the hostility of an environment based on the totality of the circumstances. *Id.* at 245.

---

[9] M.W. also argues in this point on appeal that the harassment affected a term, condition, or privilege of employment in that Six Flags failed to take any remedial steps regarding the Glasses Room Incident, resulting in M.W. suffering "continuing fear and worry." We do not address this argument under M.W.'s fourth point on appeal because such argument relates to the adequacy of remedial actions taken by Six Flags, which speaks to the fifth element of a co-worker hostile work environment claim and not to whether the harassment was sufficiently severe and pervasive as to affect a term, condition, or privilege of M.W.'s employment. *See Mason v. Wal-Mart Stores, Inc.*, 91 S.W.3d 738, 742 (Mo. App. W.D. 2002).

M.W. has shown that the inappropriate conduct at issue here created a subjectively hostile work environment, and the only dispute is whether this environment was objectively hostile. M.W. has established through her deposition testimony that J.B. and T.W.'s behavior and Hamilton's comments during the investigation caused her subjective offense and, as we are bound to do in analyzing a motion for summary judgment, we take as true M.W.'s allegations regarding this conduct's effect on her. *See Fuchs v. Mo. Dep't of Nat. Res.*, 447 S.W.3d 727, 734 (Mo. App. W.D. 2014).

As for the objective requirement, generally, "[o]nce evidence of improper conduct and subjective offense is introduced, it is largely up to the jury to determine if the conduct rose to the level of being abusive." *Diaz*, 484 S.W.3d at 84 (citation and internal quotations omitted). However, under Missouri and federal precedent examining hostile work environment claims under the MHRA, some inappropriate behavior objectively does not rise to the level of actionable harassment as a matter of law. *See, e.g.*, *id.*; *Watson*, 790 F.3d at 861. Such is the case here.

*a. Six Flags's offer to move M.W. was not an adverse employment action*

Six Flags's offer to move M.W. to a different ride or area of the amusement park did not constitute a tangible adverse action affecting a term, condition, or privilege of M.W.'s employment. During M.W.'s interview with H.R., Hamilton offered to transfer M.W. to a different ride or area of the park, if such a move would make M.W. more comfortable. M.W. was not forced to move from the Justice League ride, and in fact elected not to move to a different ride during the 2016 season and returned to the same ride for the 2017 season. M.W. was paid a consistent hourly rate throughout the 2016 season, which increased when she voluntarily returned to Six Flags for the 2017 season, and there is no evidence in the record that

any other term, condition, or privilege of employment was affected by Hamilton's offer to move to a different ride.[10] As such, Hamilton's offer to M.W. to transfer rides after her reports of harassing conduct does not constitute a tangible adverse employment action sufficient to show an effect on a term, condition, or privilege of M.W.'s employment. *See Hill*, 227 S.W.3d at 666–67 (defining tangible employment action as "a significant change in employment status," such as hiring and firing, promotion and demotion, undesirable reassignment, or compensation decisions).

> b. *The complained-of conduct does not rise to the level of actionable harassment*

The complained-of conduct by M.W.'s co-workers and Hamilton's statements to M.W. during the ensuing investigation do not constitute actionable sexual harassment in that they do not objectively rise to the level of creating a hostile work environment.[11]

M.W. testified at her deposition that, at the end of her H.R. interview, Hamilton told M.W. that "[She] can't let those two bother [her]. They're boys. Boys are going to be boys, and it's going to happen at workplaces."[12] Six Flags argues these statements are inadmissible hearsay evidence and should not be considered. Hearsay evidence consists of an out-of-court statement offered to prove the truth of the matter(s) asserted therein and that "depends on the

---

[10] Although M.W. includes in this point on appeal that at least two other female employees were also asked whether they wished to be moved to a different work area following their alleged reports of sexual harassment by J.B., such evidence is inadmissible to show a hostile work environment. First, this evidence is inadmissible hearsay evidence because it consists of out-of-court statements offered to prove the truth of the matter asserted therein. *See Bryant*, 400 S.W.3d at 332–33. Second, the experiences of other employees are neither legally nor logically relevant to whether M.W. suffered an adverse employment action that affected the terms, conditions, or privileges of her employment. *See Mason*, 91 S.W.3d at 743–44. Therefore, because we do not consider inadmissible evidence when ruling on summary judgment, we do not address this aspect of M.W.'s argument in Point IV. *See Cooper*, 204 S.W.3d at 246 ("[o]nly evidence that is admissible at trial can be used to sustain or avoid summary judgment").

[11] Although M.W. does not specifically challenge the trial court's ruling that the Glass Room and Video Incidents do not constitute actional sexual harassment as a matter of law because they are not sufficiently severe or pervasive— and she therefore waives this argument on appeal—we address these incidents because the hostility of a workplace environment is determined based on the totality of the circumstances, and not on any one discrete instance of inappropriate behavior. *See Cooper*, 204 S.W.3d at 245.

[12] M.W. testified later at her deposition that Hamilton's statement was "It happens at every workplace" and "It's going to happen to every workplace."

10

veracity of the statement for its probative value." *Bryant v. Bryan Cave, LLP*, 400 S.W.3d 325, 332–33 (Mo. App. E.D. 2013) (stating only limited exceptions or exclusions to prohibition against hearsay exist).  Here, however, we take as true Hamilton's alleged statements to M.W. because they would be admissible at trial as statements of a party-opponent.  *Cooper*, 204 S.W.3d at 246 ("[o]nly evidence that is admissible at trial can be used to sustain or avoid summary judgment").   Under the party-opponent exception to the hearsay prohibition, statements made by an employee of a party opponent may be admissible if relevant to the issues involved and if made while the employee was acting within the scope of his or her authority. *Bynote v. Nat'l Super Markets, Inc.*, 891 S.W.2d 117, 124 (Mo. banc 1995).  Because Hamilton was the H.R. Supervisor and the scope of her authority included interviewing employees regarding sexual harassment allegations, Hamilton's statements would be admissible at trial.  *See id.*

Under the totality of the circumstances, however—even considering Hamilton's statements in addition to the actions of J.B. and T.W.—the conduct at issue here does not rise to the level of an objectively hostile work environment.  The hostility of a workplace environment is determined based on the totality of the circumstances, and we look to factors including the frequency and severity of the harassing behavior, the extent to which it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance.  *LeGrand v. Area Res. for Cmty. and Human Servs.*, 394 F.3d 1098, 1102 (8th Cir. 2005) (analyzing Title VII and MHRA claims).

State and federal caselaw interpreting the MHRA sets a high bar for actionable sexual harassment.  *See, e.g.*, *id.* ("[s]exual harassment standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant") (citation and internal quotations

omitted). We find three cases of non-supervisory harassment particularly instructive. In *Meriwether v. Caraustar Packaging Co.*, the Eight Circuit held that two incidents over two consecutive days did not rise to the level of an objectively hostile work environment where a co-worker forcibly grabbed an employee's behind and upper thigh, and the following day the same co-worker and another individual joked about the incident to the employee. 326 F.3d 990, 992–94 (8th Cir. 2003). Similarly, in *LeGrand v. Area Resources for Community and Human Services*, the Eighth Circuit held that multiple incidents did not rise to the level of an objectively hostile work environment where a co-worker asked the employee to watch pornographic movies and to masturbate with him, reached for the employee's genitals, grabbed the employee's behind, gripped the employee's thigh, and tried to kiss the employee. 394 F.3d at 1100–02. Further, in *Watson v. Heartland Health Labs, Inc.*, the Eighth Circuit held that eight incidents did not rise to the level of an objectively hostile work environment where, over the course of ten days, a patient touched an employee's "crotch area" and the "inside of her thigh," "grabbed the back of [her] neck to try to kiss her," called her derogatory names, and came to the nurses' station to stand and stare at the employee. 790 F.3d at 862, 858–59. In finding such touching "highly offensive" but not objectively "sufficiently pervasive to poison [the employee's] work environment or permeate it with intimidation, ridicule, and insult," the *Watson* court found significant that the employee was only at work for "a couple hours" each day and that her interactions with the patient "lasted mere seconds." *Id.* at 862.

Here, M.W. failed to establish the threshold of actionable harm necessary to constitute a hostile work environment. The Glasses Room and Video Incidents, in addition to Hamilton's comments during the ensuing investigation, were undeniably inappropriate and should not be tolerated in the workplace—especially a workplace that employs minors. However, this conduct

12

was limited to three brief instances of no more than a few minutes each, occurred over the span of four consecutive days during the first season of M.W.'s employment, and was largely on the part of one co-worker. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998) ("acts of supervisors have greater power to alter the environment than acts of coemployees generally"); *LeGrand*, 394 F.3d at 1101 ("[m]ore than a few isolated incidents are required") (citation omitted).

There is no evidence that M.W. experienced any other harassing conduct over the course of her nearly eight months of employment at Six Flags. T.W.'s and J.B.'s conduct during the Glasses Room Incident, J.B.'s conduct during the Video Incident, and Hamilton's comments during the ensuing investigation are not so severe and pervasive such that a reasonable person would objectively find M.W.'s workplace poisoned or hostile. *See LeGrand*, 394 F.3d at 1102–03 (finding the complained-of actions "ranged from crass to churlish and were manifestly inappropriate; however, the three isolated incidents, which occurred over a nine-month period, were not so severe or pervasive as to poison [the employee's] work environment"); *Wright v. Over-The-Rd. & City Transfer Drivers, Helpers, Dockmen & Warehousemen*, 945 S.W.2d 481, 506 (Mo. App. W.D. 1997) (rejecting employee's claim that union's response to harassment complaint constituted actionable harassment in itself because response ended harassment and, moreover, union's refusals to file grievance or request termination were not sufficiently severe or pervasive to establish objectively hostile work environment); *Cottrill v. MFA, Inc.*, 443 F.3d 629, 638 (8th Cir. 2006) (finding no hostile work environment where women's toilets contaminated by foreign substances and employer's response to complaints was to use complaining employee as lure to catch co-worker peeping in women's restroom).

Viewing M.W.'s claims in light of Missouri precedent and applicable federal cases, the trial court did not err in finding the conduct here was not, as a matter of law, actionable sexual harassment creating a hostile work environment. We agree with the trial court that the record presented by M.W. fails to show the conduct affected a term, condition, or privilege of her employment and that, therefore, Six Flags is entitled to judgment as a matter of law.[13]

Point IV is denied.

<u>Points I, II, and III: whether Six Flags had actual or constructive knowledge of the harassing behavior and took proper remedial action</u>

In her second and third points on appeal, M.W. argues the trial court erred in granting Six Flags's motion for summary judgment because genuine issues of material fact existed as to whether Six Flags had actual or constructive knowledge of prior inappropriate workplace behavior on the part of J.B. and/or T.W., both directed towards M.W. and other female employees. We disagree on both points.

*a. Actual or constructive knowledge of harassing behavior*

In a case of non-supervisory co-worker harassment, as here, a plaintiff must show that the employer knew or should have known of the conduct and failed to take proper remedial action. *Mason*, 91 S.W.3d at 741. An employer will be held to have known of the harassment if it had actual or constructive knowledge thereof. *Id.* at 742. An employer gains actual knowledge through an employee reporting the harassment. *Id.* An employer's constructive knowledge, however, may be implied where the harassment is so pervasive that the employer should have known of its existence. *Id.*

---

[13] The trial court's grant of summary judgment to Six Flags could be affirmed solely based on our decision on M.W.'s fourth point on appeal because Six Flags has established that M.W. has presented insufficient evidence from which a factfinder could find the existence of this element in her favor. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Despite this, we address M.W.'s other three points on appeal regarding whether Six Flags had actual or constructive knowledge of the harassing behavior and took proper remedial action.

*i. Knowledge of harassing conduct towards M.W.*

Although M.W. attempts to create a material controversy in her third point on appeal by claiming disputed facts regarding Six Flags's knowledge of the harassing conduct towards M.W. prior to her July 11 interview with H.R., this contention misconstrues Six Flags's position and the record facts. There is no dispute that Six Flags had knowledge of harassing conduct towards M.W. prior to her interview with H.R. In fact, it is undisputed that Six Flags gained actual knowledge of the Video Incident on July 8 from Bauman's report to H.R., which was three days before M.W.'s interview. It is likewise undisputed that Six Flags gained actual knowledge of T.W.'s inappropriate behavior on July 9 from N.G.'s report to H.R., which was two days before M.W.'s interview.

M.W. attempts to create disputed facts by arguing Six Flags had knowledge of the Video Incident, which occurred on July 7, even prior to Bauman's report to H.R. on the morning of July 8. In support of this argument, M.W. points to two third-party statements: on July 7, shortly before M.W. informed Bauman and Jackson about the Video Incident, Jackson allegedly asked M.W. whether anything had happened with J.B.; and, on what M.W. believes to be July 8, Azia Willis ("Willis") told M.W. that she had also seen the video at issue. However, neither of these third-party statements create a genuine issue of disputed material fact because these statements are not admissible evidence. First, it is pure inadmissible speculation that Jackson was motivated to question M.W. by some prior knowledge of an incident between M.W. and J.B. *See Bryant*, 400 S.W.3d at 333 (attempt by witness "to state what was in someone else's mind is either sheer speculation or unadulterated hearsay," and is inadmissible at trial). Second, there is no indication from M.W.'s deposition testimony when Willis allegedly would have seen the video. In fact, Six Flags's investigation records show that H.R. interviewed Willis regarding J.B.'s

15

inappropriate conduct on July 8, the same day she allegedly informed M.W. about seeing the video. Therefore, such testimony would be inadmissible because it lacks probative value on the issue of Six Flags's constructive notice of the harassment and is not legally relevant. *See Mason*, 91 S.W.3d at 743–44 (testimony regarding other complaints of harassment were undated and thus "did not provide probative value on the issue of [the employer's] constructive notice"). Therefore, M.W. has failed to create a genuine issue of material fact that would enable a jury to find that Six Flags had knowledge of harassing conduct towards M.W. prior to July 8, 2016.

    ii. *Knowledge of J.B.'s alleged prior harassing conduct towards other individuals*

It is undisputed that Six Flags gained actual knowledge of harassing conduct on J.B.'s part on July 8, 2016, and on T.W.'s part on July 9, 2016. Bauman, a lead, reported J.B. to H.R. on July 8, and N.G. filed a written complaint against J.B. and T.W. on July 9. The thrust of M.W.'s argument is that Six Flags had actual or constructive knowledge of prior instances of J.B.'s harassing conduct towards other individuals before July 8.[14] The deposition testimony M.W. offers to establish a disputed material fact as to Six Flags's prior knowledge of J.B.'s alleged inappropriate conduct consists solely of her own deposition testimony as to the following out-of-court statements by third parties: (1) that Jackson previously reported being inappropriately grabbed by J.B.; (2) that another female co-worker, "Tiffany,"[15] previously reported J.B. for harassing conduct; (3) that Jackson and Bauman had told M.W. there were past complaints about J.B.'s behavior towards female employees; and (4) that J.B.'s harassing

---

[14] M.W. makes no argument about actual or constructive knowledge of prior instances of inappropriate behavior on the part of T.W., and there are no such facts in the record. Therefore, we focus our analysis only on allegations relating to J.B.'s conduct.

[15] There is no evidence in the record as to Tiffany's last name, so we here refer to her only by her first name. We imply no familiarity and intend no disrespect.

16

behavior is widely known about and discussed among Six Flags employees. None of these statements create a genuine issue of disputed material fact as to Six Flags having knowledge of J.B.'s inappropriate conduct prior to July 8, 2016, because each relies on inadmissible evidence that we cannot consider on summary judgment, as discussed below.

M.W.'s deposition testimony that Jackson previously reported being inappropriately grabbed by J.B., that Tiffany previously reported J.B. for harassing conduct, and that Jackson and Bauman had told M.W. there were past complaints about J.B.'s behavior towards female employees constitutes inadmissible hearsay evidence. Hearsay evidence consists of an out-of-court statement offered to prove the truth of the matter(s) asserted therein and that "depends on the veracity of the statement for its probative value." *Bryant*, 400 S.W.3 at 332–33. Hearsay evidence is inadmissible at trial, and only limited exceptions or exclusions to this prohibition exist. *See id.* Therefore, because only evidence that is admissible at trial can be used to support or defend against summary judgment, hearsay evidence generally cannot be considered in ruling on summary judgment. *Cooper*, 204 S.W.3d at 245–46.

All three statements are inadmissible hearsay evidence because they are out-of-court statements offered to prove the truth of the matters asserted therein. M.W. stated in her deposition that: Jackson had told M.W. on July 7 about J.B. inappropriately grabbing her behind and that she had reported J.B.'s conduct; that Bauman and Jackson told M.W. on July 7 that, "if there is something that has to do with [J.B.], [she] need[ed] to tell [them] immediately because if there's an issue, [she's] not the only girl. … there's other reports"[16]; and that Tiffany said she had "made reports" because J.B. had "sexually harassed [her]." M.W.'s testimony provided no further details regarding the alleged conduct, its date(s), or what constituted a "report" of such

---

[16] M.W. testified later in her deposition that Bauman and Jackson told her that, "if there's something about [J.B.], something he's involved in, you need to tell us because he has done other things to other girls."

conduct. In arguing that these statements gave Six Flags knowledge of previous harassing conduct by J.B., M.W. necessarily offers these statements for the truth of the matter asserted: that J.B. had committed prior harassing conduct towards Jackson, Tiffany, and other females, which one could infer occurred at an unspecified time prior to July 7, 2016; and, further, that this conduct was reported to H.R. *See Mason*, 91 S.W.3d at 744 (finding testimony that other women told witness they made complaints regarding alleged harasser's behavior to be inadmissible hearsay because "it was offered for the truth of the matter asserted—that other women had complained to management about [the alleged harasser's] conduct"). Therefore, M.W. cannot rely on these hearsay statements to show a disputed issue of material fact precluding summary judgment. *See id.*; *Bryant*, 400 S.W.3d at 332–33.

Additionally, M.W.'s deposition testimony that "everybody" knows how J.B. acts because he's "a girl chaser" is inadmissible evidence because it constitutes pure speculation. M.W. stated in her deposition that "Tyler knows how [J.B.] acts, because everybody … the team or whatever—they all were talking about [J.B.]," namely that J.B. "likes to talk to every girl" and "try to go out with them." This attempt "to state what was in someone else's mind is either sheer speculation or unadulterated hearsay" that is inadmissible at trial. *Bryant*, 400 S.W.3d at 333. Moreover, the leap required to infer that J.B. is a known sexual harasser of other female employees from the statement that J.B. "likes to talk to every girl" and "try to go out with them" is too wide a leap to make on summary judgment, even viewing the evidence in the light most favorable to M.W.

Although M.W. contended at oral arguments that these statements were admissible non-hearsay in that they were offered to show notice—and not to prove the truth of the matter asserted—we reject this argument as a misapplication of this exception to the prohibition on

18

hearsay evidence. Evidence that a co-worker complained to management about harassment by a specific co-worker may have probative value on the question of whether an employer had at least constructive notice of the harassment. *Mason*, 91 S.W.3d at 743. However, an employer may only be charged with notice in this way when such information comes to the attention of an employee who has "a duty to pass on the information to someone within the company who has the power to do something about it." *Diaz*, 484 S.W.3d at 84–85 (citation omitted). Here, there is no evidence regarding what constituted the "reporting" referenced by others to M.W., when such "reports" were made, or to whom the "reports" were given. Given the sparse record here, we are not able to say that such statements would be admissible at trial for the purpose of showing Six Flags's actual or constructive knowledge of the harassment.

M.W. has not presented any admissible evidence regarding Six Flag's knowledge of prior instances of J.B.'s harassing conduct and, therefore, she has failed to establish that there remains a genuine dispute as to the material facts in this regard. *See Cooper*, 204 S.W.3d at 246 ("[o]nly evidence that is admissible at trial can be used to sustain or avoid summary judgment"). As such, the only admissible record evidence that remains is Hamilton's affidavit statement that "Six Flags had never received any complaints against J.B. or T.W., formal or informal, prior to this complaint [regarding the incidents at issue here]." Therefore, we conclude that the undisputed record facts show that Six Flags gained knowledge of J.B.'s harassing conduct on July 8, 2016, and T.W.'s harassing conduct on July 9, 2016.

Moreover, creating a genuine dispute of fact as to when Six Flags gained knowledge of J.B. or T.W.'s conduct alone is insufficient to bar summary judgment. The timing of when Six Flags gained knowledge of the harassing conduct is relevant only insofar as it allows the factfinder to determine the reasonableness of Six Flags's remedial action. *See Diaz*, 484 S.W.3d

at 76. Given the record facts outlined above, we analyze the reasonableness of Six Flags's remedial action from when it gained knowledge of the harassing conduct: July 8 for J.B., and July 9 for T.W.

  b. *Appropriate remedial action*

   In her first point on appeal, M.W. argues the trial court erred in granting Six Flags's motion for summary judgment because genuine issues of material fact existed as to whether Six Flags took proper remedial action following the harassing behavior. We disagree.

   "Prompt remedial action shields an employer from liability when the harassing conduct is committed by a co-worker rather than by a supervisor." *Meriwether*, 326 F.3d at 994. In assessing the appropriateness of an employer's remedial action we consider several factors, including: the length of time between the notice and the remedial action, the disciplinary or preventative measures taken, and whether such measures ended the harassment. *Id.* In *Meriwether*, the Eighth Circuit held that an employer's remedial actions "were prompt and effective, as a matter of law," where the employer: promptly investigated an employee's complaint after being informed about the harassing conduct two days after it occurred; suspended the alleged harasser during the course of the two-day investigation and for an additional five days thereafter; required the alleged harasser to undergo additional harassment training; warned the alleged harasser that he would be terminated if any further incident occurred; and such action ended the harassment towards the employee. *Id.*

   Six Flags took appropriate remedial action by quickly investigating the reports of misconduct and by removing J.B. and T.W. from Six Flags, which ended any inappropriate conduct. Six Flags began interviewing involved individuals on July 8, the same day it received the first report about inappropriate conduct. J.B. was suspended and terminated effective July 9,

20

which was one day after Bauman informed Six Flags about the "video" incident and the same day that H.R. interviewed N.G. and J.B. In fact, J.B.'s last shift at Six Flags was July 7, 2016, the same day of the Video Incident and only one day after the Glasses Room Incident. Six Flags also contacted the Eureka police department and informed them of N.G.'s complaint against J.B. Specifically regarding M.W., Six Flags arranged to speak with her on her next regularly-scheduled workday, July 11. M.W. willingly admitted in her deposition that it was H.R. that asked to speak with her as a witness to N.G.'s complaint; H.R. that initiated communication with M.W. regarding inappropriate conduct she had experienced, which led to her revealing the Glasses Room Incident; H.R. that informed M.W. she needed to make a written statement; and H.R. that informed and followed up with M.W.'s parents regarding the incidents. M.W. admitted in her deposition that, from the conclusion of the investigation, she did not experience any other harassing conduct on the part of J.B., T.W., or any other individual for the duration of her time at Six Flags. Six Flags took prompt and effective remedial action upon learning of the harassing conduct, and therefore they cannot be held liable for M.W.'s co-workers' actions as a matter of law. *See Meriwether*, 326 F.3d at 994 (holding as matter of law that employer could not be liable for co-worker harassment because employer took prompt remedial action).

M.W. argues that these actions cannot be deemed appropriate remedial action because she was not informed of the fact of T.W.'s and J.B.'s terminations. In her deposition, M.W. testified that H.R. informed her J.B. had been suspended but failed to inform her that either J.B. or T.W. had been fired. Later in her deposition, M.W. stated she inquired of a "lead" about J.B. and was told he had been fired. We reject M.W.'s argument because our inquiry is focused on whether Six Flags appropriately remedied the harassing conduct, not whether it kept M.W. apprised of its remedial actions. *See Weger v. City of Ladue*, 500 F.3d 710, 723 (8th Cir. 2007)

21

("where the employer responds to a sexual harassment complaint in such a way as to promptly stop the sexual harassment, there is no basis for finding employer's postcomplaint actions not sufficiently corrective") (analyzing Title VII and MHRA claims). Although it may be better practice to keep witnesses and victims apprised of any remedial action taken, it is undisputed that the actions taken by Six Flags here were prompt and effectively ended all harassing conduct. M.W. also finds fault in Six Flags's failure to implement the changes she suggested to the "glasses room" at the Justice Ride.[17] However, an employee's wishes do not dictate the reasonableness of an employer's remedial action. *Id.* ("[a]lthough an employee remains unsatisfied with her employer's resolution of her complaint, we have never stated that a complainant in a discrimination action has a right to the remedy of her choice") (citation omitted).

Lastly, M.W. argues that Six Flags's H.R. investigation into the harassing conduct was not appropriate remedial action in that Hamilton, who led the investigation, made inappropriate statements to M.W. during the course of the investigation. As noted in our discussion of Point IV, we take as true that, at the end of her H.R. interview, Hamilton told M.W. that "[She] can't let those two bother [her]. They're boys. Boys are going to be boys, and it's going to happen at workplaces." While we question the appropriateness of suggesting that a child victim of sexual harassment should learn to live with harassment, Six Flags's investigation of the harassing incidents and prompt termination of the individuals involved nevertheless constituted appropriate remedial action as a matter of law. *See id.* ("where the employer responds to a sexual harassment complaint in such a way as to promptly stop the sexual harassment, there is no basis for finding employer's postcomplaint actions not sufficiently corrective"); *cf. Wright*, 945

---

[17] M.W. stated that she suggested at least removing the lock on the "glasses room" door that allowed it to be locked from the inside and installing a camera outside the "glasses room" door.

S.W.2d at 506 (rejecting employee's claim that union's response to harassment complaint constituted actionable harassment because response effectively ended harassment).

Points I, II, and III are denied.

Conclusion

The trial court's grant of summary judgment in favor of Six Flags was proper because Six Flags has established that M.W. presented insufficient evidence from which a factfinder could find two necessary elements of her hostile work environment claim: that the conduct at issue was severe or pervasive enough to affect a term, condition, or privilege of M.W.'s employment and that Six Flags knew or should have known of the harassing conduct and failed to take proper remedial action. Finding no error, we affirm the trial court's grant of summary judgment in favor of Six Flags St. Louis, LLC.

_____

Robin Ransom, Judge

James M. Dowd, P.J., and Gary M. Gaertner, Jr., J., concur.